IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. VITTITOE

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

DUSTIN L. VITTITOE, APPELLANT.

Filed May 6, 2025.    No. A-25-063.

Appeal from the District Court for Saunders County: CHRISTINA M. MARROQUIN, Judge.
Affirmed as modified.

Chad Wythers for appellant.

Michael T. Hilgers, Attorney General, and Jacob M. Waggoner for appellee.

MOORE, PIRTLE, and WELCH, Judges.

PIRTLE, Judge.

## INTRODUCTION

Dustin L. Vittitoe was convicted in the district court for Saunders County for attempted first degree sexual assault of a 13-year-old female, K.W. He was sentenced to 12 to 18 years' imprisonment. He now appeals that sentence and claims his trial counsel was ineffective. For the reasons that follow, we affirm as modified.

## BACKGROUND

Around April or May 2023, Vittitoe and K.W. began texting with one another. In these messages, Vittitoe asked K.W. about having sex with him. He also sent her a picture of him having sex with his girlfriend, H.D. At some point during these exchanges, Vittitoe learned that K.W. had a crush on H.D. and wanted to kiss her. Vittitoe told her that if she wanted to kiss his girlfriend, she needed to have sex with him.

- 1 -

On May 26, 2023, Vittitoe, H.D., K.W., and one of K.W.'s friends, L.N., met at K.W.'s grandmother's house while her grandmother was away. At this time, Vittitoe was 21 years old, H.D. was 18 years old, and K.W. and L.N. were both 13 years old. Upon arriving at the residence, the four individuals entered a camper parked in the driveway. L.N. recorded their initial conversation. This recording showed that once inside the camper, Vittitoe stated, "[W]e've got to do it fast, come on, we're fucking around too much." H.D. responded by saying, "I don't like this" and K.W. said "I'm just terrified."

After these comments, H.D. and K.W. began kissing while Vittitoe watched. H.D. and K.W. then removed their clothes and H.D. had K.W. lie on the bed. At this point, Vittitoe got on top of K.W., grabbed her breast, and penetrated her vagina with his penis. K.W. said the penetration only lasted for several seconds before they had to stop because her grandmother had returned.

Two days later, on May 28, 2023, K.W. informed her grandparents about the incident. Law enforcement was contacted and K.W. participated in a forensic interview. During this interview, K.W. disclosed that she was "too scared to talk" when Vittitoe penetrated her and that she did not want to have sex with him.

Law enforcement later interviewed L.N. In describing the incident, she stated that K.W. and H.D. started "making out" and that H.D. kept trying to remove K.W.'s pants while Vittitoe watched. While this was happening, Vittitoe told K.W. and L.N. that they were "hot" and tried to bring L.N. closer to him. However, L.N. indicated that she was not interested by moving away. H.D. and K.W. then took their clothes off and H.D. pushed K.W. on to the bed. Once K.W. was on the bed, L.N. said that K.W. told H.D. to stop, but Vittitoe got on top of her and began having sex with her. L.N. stated that Vittitoe and H.D. both knew she and K.W. were 13 years old when this all happened.

When law enforcement spoke with H.D., she stated that she, Vittitoe, K.W., and L.N. had been in the camper on the night in question. She admitted to kissing K.W. and said that they showed each other their breasts. However, she denied that Vittitoe had sex with K.W. and said that "he never touched her."

On July 14, 2023, Vittitoe was charged with one count of first degree sexual assault, a Class II felony. On November 2, pursuant to a plea agreement, the State amended the charge to attempted first degree sexual assault, a Class IIA felony. On the same day, Vittitoe pled no contest to the amended charge. The court accepted his plea, convicted him of the charge, and ordered the completion of a presentence investigation report.

On November 22, 2023, Vittitoe was charged in the U.S. District Court for the District of Nebraska for possession of child pornography or attempted possession of child pornography. Earlier in February 2023, federal law enforcement had served Vittitoe with a search warrant and seized his computer after receiving a tip from his ex-girlfriend. After searching his computer, law enforcement discovered more than a 2-year history of child sexual exploitative media. At the time of this appeal, the status of those proceedings remained unclear.

Vittitoe's sentencing hearing in the current matter occurred on February 12, 2024. The State addressed the court first and discussed the federal charges. In doing so, the State explained how Vittitoe engaged in this behavior with K.W. after already having his computer seized by federal law enforcement. The State expressed concern about this timeline and Vittitoe's high risk

of recidivism. With this, the State urged the court to not depreciate the seriousness of Vittitoe's offense.

Vittitoe's attorney then addressed the court. He noted that other than the federal charges, for which he was still presumed innocent, Vittitoe lacked any criminal history. He pointed to Vittitoe's age as a mitigating factor and informed the court that he was currently on medication to reduce his libido. Vittitoe's attorney next informed the court that Vittitoe's father was also a registered sex offender. He essentially argued that being raised by a sex offender was a uniquely bizarre experience that probably had lasting negative impacts on Vittitoe's development.

Prior to levying its sentence, the court stated:

> The Court has considered the entirety of the presentence, Dr. Newring's evaluation, the VASOR report, the SSI, the facts and circumstances of the case, the lack of criminal history. I've considered the age of [Vittitoe] and the age of the victim. The Court finds, based on the record and the presentence investigation, that this is an aggravated offense involving penetration of a victim 13 years or older without the consent of the victim.
>
> . . . .
>
> [F]urther, the Court finds that this is an egregious offense. And while I can appreciate that a young man doesn't fully mature at the age of 21, I also have to recognize that we are talking about a very young adolescent. The situation was planned. It was arranged. [Vittitoe] was aware of the activity and the inappropriateness of the age of the victim. I think this was a violent situation in ways, given what occurred.

The court then sentenced Vittitoe to 12 to 18 years' imprisonment with 11 days credit for time served. It also placed him on the Nebraska Sex Offender Registry for life.

Following the imposition of his sentence, Vittitoe's trial counsel failed to file an appeal as directed. As a result, Vittitoe filed a motion for postconviction relief, which was granted. To remedy his trial counsel's failure, the court reinstated Vittitoe's right to a direct appeal. This is that appeal. Vittitoe's counsel on appeal is not the same as his trial counsel.

## ASSIGNMENTS OF ERROR

Restated, Vittitoe assigns that (1) the district court abused its discretion by imposing an excessive sentence, (2) the district court violated his right against cruel and unusual punishment under the Eighth Amendment of the federal constitution, and (3) his trial counsel was ineffective for failing to interview or depose H.D.

## STANDARD OF REVIEW

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Rivera-Meister*, 318 Neb. 164, 14 N.W.3d 1 (2024). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

Whether a sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment presents a question of law. *State v. Dejaynes-Beaman*, 317 Neb. 131, 8 N.W.3d 779 (2024). When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Id.*

Whether a claim of ineffective assistance of counsel may be determined on direct appeal is a question of law. *State v. Clark*, 315 Neb. 736, 1 N.W.3d 487 (2024). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

Consideration of plain error occurs at the discretion of an appellate court. *State v. Mabior*, 314 Neb. 932, 994 N.W.2d 65 (2023). Plain error may be found on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process. *Id.*

ANALYSIS

*Excessive Sentence.*

Vittitoe first assigns that the district court abused its discretion by imposing an excessive sentence. He asserts the court abused its discretion because it did not give specific reasons as to why a 12- to 18-year term of imprisonment was warranted nor articulate how it weighed certain mitigating factors.

Vittitoe was convicted of attempted first degree sexual assault, a Class IIA felony. A Class IIA felony is punishable by up to 20 years' imprisonment and does not carry a minimum term of imprisonment. Neb. Rev. Stat. § 28-105 (Cum. Supp. 2022). Accordingly, Vittitoe's sentence is within the statutory limits.

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. King*, 316 Neb. 991, 7 N.W.3d 884 (2024). In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.* The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Vittitoe's arguments essentially amount to a request for this Court to reweigh the sentencing factors and determine whether the sentence is appropriate. But it is not the appellate court's function to conduct a de novo review of the record to determine what sentence it would impose. *Id.* A sentencing court is also not required to articulate on the record that it has considered each sentencing factor or make specific findings as to the facts pertaining to the factors or the weight given them. *State v. Greer*, 309 Neb. 667, 962 N.W.2d 217 (2021). With these principles in mind, we determine the district court did not abuse its discretion by not giving specific reasons for it sentence or articulating how it weighed the various factors.

We also determine that the length of Vittitoe's sentence does not constitute an abuse of discretion. On the Level of Service/Case Management Inventory, Vittitoe scored as a "Medium

High" risk to recidivate. He scored in the "Very High" risk level for the family/marital category, in the "High" risk level for the leisure/recreation, procriminal attitude, and antisocial pattern categories, and in the "Medium" risk level for the companions and alcohol/drug problems categories. And although he scored in the "Low Risk" range on the Vermont Assessment of Sex Offender Risk, he scored as a "High Dynamic Risk" on the Sex Offender Treatment Intervention and Progress Scale. These scores gave Vittitoe a combined static and dynamic risk of "Moderate-Low."

While these assessments indicate that Vittitoe is not an unusually high risk to the public, we determine that the nature of his offense justifies his sentence. The record indicates that Vittitoe is infatuated with female minors and is willing to act on those impulses. Although he knew that K.W. was only 13 years old, he sent her sexually explicit messages, orchestrated a meet up, and sexually assaulted her. In planning this incident, Vittitoe took advantage of K.W.'s "crush" on H.D. for his own sexual benefit. More so, he demonstrated a similar eagerness to involve L.N. in the sexual abuse. And if those actions were not concerning enough, this all occurred after federal authorities had already seized his computer on suspicions of possessing child pornography. As such, we cannot determine the district court's sentence was untenable or unreasonable. Therefore, we determine the district court did not abuse its discretion in sentencing Vittitoe to 12 to 18 years' imprisonment.

*Cruel and Unusual Punishment.*

Vittitoe next assigns that the length of his sentence amounts to cruel and unusual punishment prohibited by the Eighth Amendment to the U.S. Constitution.

The Eighth Amendment prohibits not only barbaric punishments but also sentences that are disproportionate to the crime committed. *State v. Becker*, 304 Neb. 693, 936 N.W.2d 505 (2019). The U.S. Supreme Court has characterized this as a "narrow proportionality principle" which does not require strict proportionality between crime and sentence, but, rather, forbids only extreme sentences that are grossly disproportionate to the crime. *Id.* at 703, 936 N.W.2d at 513 (citing *Ewing v. California*, 538 U.S. 11, 123 S. Ct. 1179, 155 L. Ed. 2d 108 (2003)). The Nebraska Supreme Court has generally held that a sentence does not violate the Eighth Amendment if it falls within the statutory limit. See *State v. Becker, supra*.

As previously discussed, Vittitoe's sentence was within the statutory limits and did not constitute an abuse of discretion. For the same reasons, we likewise determine that the sentence was not an extreme sentence that was grossly disproportionate to the crime. Therefore, we conclude that the district court's sentence did not violate Vittitoe's rights under the Eighth Amendment to the U.S. Constitution.

*Ineffective Assistance of Trial Counsel.*

Vittitoe next assigns that his trial counsel was ineffective for failing to interview or depose H.D. He argues that his trial counsel should have deposed H.D. because she was a key witness who could have provided exculpatory evidence that he did not have sex with K.W.

When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally

barred in a subsequent postconviction proceeding. *State v. Clark*, 315 Neb. 736, 1 N.W.3d 487 (2024). However, the fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *Id.* The determining factor is whether the record is sufficient to adequately review the question under the standard of review previously noted. *Id.* The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id.*

Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Clark, supra.* To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* When a conviction is based upon a guilty or no contest plea, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty. *State v. Anthony*, 29 Neb. App. 839, 961 N.W.2d 545 (2021). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *State v. Clark, supra.*

We determine the record is sufficient to handle this claim on direct appeal and that Vittitoe is unable to demonstrate he was prejudiced by this alleged failure of his trial counsel. First, there was already substantial evidence against Vittitoe when he accepted the plea deal. Law enforcement had K.W.'s allegations, L.N.'s similar account of what had occurred, and H.D. placing herself, Vittitoe, K.W., and L.N. in the camper. More so, by admitting to kissing K.W., H.D. confirmed that at least a portion of K.W. and L.N.'s accounts were true.

Second, Vittitoe already had access to H.D.'s exculpatory statement. A police report dictated H.D.'s claim that "Vittitoe did not have sex with K.W." and that he "did not touch her." Given this evidence, it is not clear what additional exculpatory information Vittitoe's trial counsel could have obtained from interviewing or deposing H.D. Therefore, we determine there was not a reasonable probability that Vittitoe would have insisted on going to trial if his trial counsel had interviewed or deposed her. Accordingly, we determine the record is sufficient to refute this claim of ineffective assistance.

*Plain Error.*

Although not raised by Vittitoe, the State requests that we remedy a clerical error in Vittitoe's sentencing order. The district court's sentencing order incorrectly stated that Vittitoe was found guilty of "Sexual Assault in the First Degree." However, Vittitoe was found guilty of "Attempted Sexual Assault in the First Degree." As such, the State requests that we modify the sentencing order to include the word "Attempted."

Plain error may be found on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process. *State v. Mabior*, 314 Neb. 932, 994 N.W.2d 65 (2023).

We agree that a clerical error appears in the sentencing order and determine the district court plainly erred. However, we note that this error did not impact Vittitoe's sentence. Despite the error, the sentencing order properly classified the conviction as a Class IIA felony and imposed a sentence within the statutory limits. As such, we only modify the sentencing order to reflect that Vittitoe was convicted of attempted sexual assault in the first degree, not sexual assault in the first degree.

## CONCLUSION

We determine the district court did not abuse its discretion in sentencing Vittitoe to 12 to 18 years' imprisonment. We next determine that his sentence did not violate his Eighth Amendment right against cruel and unusual punishment. We also determine that his claim of ineffective assistance of trial counsel fails because he is unable to demonstrate he was prejudiced by his counsel's alleged failure to interview or depose H.D. Lastly, we determine the district court plainly erred by incorrectly noting in its sentencing order that Vittitoe was convicted of sexual assault in the first degree when he was actually convicted of attempted sexual assault in the first degree. Accordingly, we modify the sentencing order to rectify this clerical error.

AFFIRMED AS MODIFIED.